DERRICK N. TERRY,
  c/o Justly Prudent
  1140 3rd St. NE, Suite 2180
  Washington, DC 20002

        Plaintiff,

        v.

AMANDA M. STEWART,
  2517 Dowitcher Court
  Waldorf, MD 20601

        Defendant.

_____/

Case No. 8:26-cv-712

DEMAND FOR JURY TRIAL

## **COMPLAINT**

Plaintiff Derrick N. Terry ("Mr. Terry"), for his complaint against Defendant Amanda M. Stewart, in her individual capacity ("Commissioner Stewart"), alleges the following:

1.      Mr. Terry brings this action to vindicate his constitutional right to participate in the political process and engage with his elected representative on matters of public concern. Since approximately June 2018, Commissioner Stewart has blocked Mr. Terry from accessing and engaging with her official Facebook page, a digital public forum through which she communicates with constituents about county business, promotes official events, shares legislative updates, and solicits public input on matters affecting Charles County, Maryland.

2.      Mr. Terry, a United States Army veteran and former candidate for the Charles County Board of Commissioners in 2018, has been silenced in this digital public square solely because his political views and civic criticism differ from those of Commissioner Stewart. While other constituents can view Commissioner Stewart's official announcements, participate in

discussions about county policies, and engage with her office on matters of public importance, Mr. Terry has been excluded from this essential channel of political discourse for nearly seven years.

3. Commissioner Stewart's exclusion of Mr. Terry from her official social media page constitutes viewpoint discrimination in a designated public forum, in violation of the First Amendment to the United States Constitution. Since Commissioner Stewart regularly uses her social media account for official purposes, she cannot arbitrarily exclude Mr. Terry based solely on his viewpoints.

4. Additionally, on June 29, 2023, during a public meeting of the Charles County Board of Commissioners, Commissioner Stewart made false and defamatory statements about Mr. Terry, publicly labeling him as "sexist" and accusing him of engaging in "harassment." These are serious accusations that impute criminal conduct under Maryland law and were made without any factual basis. These false statements were broadcast publicly and have caused substantial harm to Mr. Terry's personal and professional reputation.

5. Mr. Terry's claims arise under Section 1 of the Ku Klux Klan Act of 1871, codified as 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a) because this case involves questions of federal law and because Mr. Terry seeks damages for violations of his civil rights.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Commissioner Stewart resides within this judicial district, and a substantial part of the events or omissions giving rise to Mr. Terry's claims herein occurred within this judicial district.

**THE PARTIES**

8.      Plaintiff Derrick N. Terry is a fifty-three-year-old resident of Charles County, Maryland. Mr. Terry is a United States Army veteran who honorably served his country and who continues to serve his community through civic engagement and participation in the democratic process. In 2018, Mr. Terry was a candidate for the Charles County Board of Commissioners. Mr. Terry has been an active and engaged citizen who regularly participates in local government affairs, attends public meetings, and communicates with elected officials regarding matters of public concern affecting Charles County and its residents.

9.      Defendant Amanda M. Stewart is an elected member of the Charles County Board of Commissioners and has served in that capacity continuously since at least 2018. Commissioner Stewart operates and maintains a Facebook page that she uses extensively for official government purposes, including communicating with constituents about county business, announcing official events and town hall meetings, promoting county programs and initiatives, sharing information about legislative proposals, soliciting public input on policy matters, and performing other functions associated with her duties as a Commissioner. Upon information and belief, Commissioner Stewart resides in Charles County, Maryland. Commissioner Stewart is sued in her individual capacity.

**BACKGROUND**

10.     Mr. Terry is an honorably discharged veteran of the United States Army who has demonstrated a lifelong commitment to public service and civic engagement.

11.     In 2018, Mr. Terry declared his candidacy for the Charles County Board of Commissioners. As a candidate, Mr. Terry participated in the democratic process by expressing his views on matters of local governance, offering policy alternatives, and engaging with voters

and incumbent officeholders, including Commissioner Stewart, on issues affecting Charles County.

12.     Since 2018, Mr. Terry has continued to be an active participant in local government affairs. He regularly attends meetings of the Charles County Board of Commissioners, submits comments on matters of public concern, and exercises his constitutional rights to petition the government and engage in political speech.

13.     Commissioner Stewart operates and maintains the Facebook page located at https://www.facebook.com/amanda.carter.528316 (hereinafter referred to as the "Facebook page"), which she uses extensively for official government purposes related to her position as a Charles County Commissioner.

14.     Commissioner Stewart's Facebook page functions as an official channel of communication between her office and the constituents of Charles County. Through this page, Commissioner Stewart regularly posts content concerning county government business, including announcements of official town hall meetings and public forums, information about county budget discussions and fiscal matters, promotion of county-sponsored events and programs such as back-to-school fiestas and community celebrations, county proclamations and official recognitions, legislative proposals and policy initiatives, public safety announcements and emergency information, updates on infrastructure projects and county improvements, and invitations for constituent feedback on matters of public concern. Attached hereto Exhibit 1 are true and correct copies of screenshots of Commissioner Stewart's Facebook page, from August 1, 2022 through Nov. 19, 2025.

15.     Commissioner Stewart's Facebook page is accessible to members of the public and permits interactive engagement, including the ability for users to view posts, submit

comments, and participate in discussions about matters of public concern affecting Charles County.

16. Commissioner Stewart possesses actual authority, by virtue of her elected position as a Charles County Commissioner, to speak on behalf of the county government and to communicate with constituents regarding official county business.

17. Through her Facebook page, Commissioner Stewart purports to exercise that authority by presenting herself as a Commissioner, using the page to conduct official business, and interacting with constituents in her governmental capacity rather than as a private citizen.

### *The Blocking of Mr. Terry*

18. Upon information and belief, the blocking of Mr. Terry from Commissioner Stewart's Facebook page occurred in or around June 2018, during the Democratic primary campaign for the District 3 seat on the Charles County Board of Commissioners. Mr. Terry was a candidate directly challenging Commissioner Stewart for her seat.

19. During the 2018 campaign, Mr. Terry publicly criticized Commissioner Stewart's record in office, stating at candidate forums and in published campaign materials that the incumbent had failed to provide a long-term economic development plan, had stripped citizens' property rights and devalued their homes through policies such as the Watershed Conservation District, had spent millions of dollars on noncritical matters, had jeopardized the safety of citizens through inequitable funding for the Sheriff's Office and corrections, and had imposed excessive taxes to offset a lack of attracting career-based businesses to the county. Mr. Terry campaigned on a platform of accountability, integrity, and transparency, which he stated had been lacking during Commissioner Stewart's tenure.

20.     Mr. Terry and Commissioner Stewart appeared together at multiple candidate forums during the spring of 2018, including a forum hosted by the Charles County Democratic Central Committee in March 2018 and a forum hosted by the Smarter Growth Alliance of Charles County in April 2018. At these events, Mr. Terry publicly articulated his criticisms of Commissioner Stewart's policy positions and her record as the District 3 Commissioner. These criticisms constituted core political speech protected by the First Amendment.

21.     The blocking of Mr. Terry from Commissioner Stewart's Facebook page occurred during or immediately following this contested primary campaign, in which Mr. Terry was the most prominent challenger to Commissioner Stewart for the District 3 seat. Upon information and belief, the blocking was a direct response to Mr. Terry's political opposition and his public criticism of Commissioner Stewart's performance in office.

22.     Following his unsuccessful candidacy in 2018, Mr. Terry continued to exercise his First Amendment rights by regularly attending public meetings of the Board of County Commissioners and engaging in protected civic speech critical of county governance, including Commissioner Stewart's conduct in office.

23.     On or about January 25, 2024, Mr. Terry appeared at a District 3 public hearing of the Charles County Charter Board and voiced concerns regarding commissioners' pensions, calling on the board to address the issue in the proposed county charter. Mr. Terry framed his advocacy in nonpartisan terms, stating that the issue of government accountability was "not a Republican thing, a Democratic thing, or an independent thing." These comments constituted protected speech on a matter of significant public concern.

24.     On or about November 19, 2024, Mr. Terry appeared at a joint town hall of the Board of County Commissioners following the failure of the charter referendum and directly

questioned Commissioners Bowling and Stewart about their public remarks during and after the charter process. Mr. Terry specifically challenged the manner in which Commissioner Bowling had used social media to criticize fellow commissioners after policy votes. These comments constituted protected speech on a matter of significant public concern.

25. On or about March 25, 2025, Mr. Terry appeared before the Board of County Commissioners at a quarterly joint town hall and posed a series of pointed questions to individual commissioners regarding current and past policy decisions and the restoration of public trust in county government. Mr. Terry questioned whether it was unethical for commissioners' immediate family members' nonprofits to receive funds from the county charitable trust. He directly questioned Commissioner Stewart regarding whether she believed it was professional to begin attendance at commissioner meetings virtually and then appear in person while the meeting was already in progress. He posed an open question to all commissioners regarding their support for term limits.

26. In response to Mr. Terry's questions at the March 25, 2025 town hall, Commissioner Stewart stated: "The same person continues to come up and question several things." This statement reflects Commissioner Stewart's awareness of, and apparent frustration with, Mr. Terry's persistent exercise of protected speech in questioning the conduct of county officials, including Commissioner Stewart herself. Commissioner Stewart's characterization of Mr. Terry as "the same person" who "continues to come up and question several things" is consistent with and supports the inference that her decision to block Mr. Terry from her Facebook page was motivated by her desire to suppress his critical viewpoint rather than by any viewpoint-neutral justification.

27. Throughout the period from 2018 to the present, Mr. Terry has been blocked from Commissioner Stewart's Facebook page, which has deprived him of the ability to engage with Commissioner Stewart's official communications in the same digital forum available to other constituents. During this same period, Commissioner Stewart has used her Facebook page to post about many of the same topics on which Mr. Terry has spoken critically at public meetings, including county governance, public safety, fiscal policy, infrastructure, and community events. Mr. Terry's exclusion from the interactive features of this forum has prevented him from participating in the online public discourse that Commissioner Stewart has facilitated for other constituents on these matters.

28. Commissioner Stewart blocked Mr. Terry from her official Facebook page because of his political opposition, his candidacy for the Board of Commissioners in 2018, and his criticism of Commissioner Stewart's official conduct and policy positions. The blocking was motivated by viewpoint discrimination, specifically that of Commissioner Stewart's disagreement with Mr. Terry's political speech and civic criticism.

29. Upon information and belief, Commissioner Stewart has not blocked other constituents who express supportive views of her policies and official conduct. The blocking of Mr. Terry was selective and based on the viewpoint of his speech.

30. Commissioner Stewart's blocking of Mr. Terry has continued uninterrupted from approximately June 2018 to the present, a period of nearly seven years.

***Attempts to Resolve the Matter***

31. On July 25, 2025, Mr. Terry sent a formal written demand to Commissioner Stewart and to the Charles County Citizen Response Office, requesting that Commissioner

Stewart restore his access to her official Facebook page and cease the unconstitutional viewpoint discrimination.

32.     On August 8, 2025, the Charles County Citizen Response Office responded to Mr. Terry's complaint. In its response, the county characterized Commissioner Stewart's Facebook page as "personal" and "political" rather than official, and stated that the matter fell outside the county's scope because the page was "not sanctioned" by Charles County.

33.     The county's characterization is inconsistent with the actual use of Commissioner Stewart's Facebook page, which, as set forth above, is extensively used for official government communications regarding county business, town halls, county events, legislative matters, and other official purposes.

34.     On December 2, 2025, Mr. Terry sent a formal demand letter to Commissioner Stewart requesting, among other things, restoration of his Facebook access and a written acknowledgment of his right to access the page. The demand letter established a deadline of December 19, 2025 for Commissioner Stewart to respond and comply.

35.     On December 15, 2025, Commissioner Stewart responded through the Charles County Citizen Response Office. In her response, Commissioner Stewart denied blocking Mr. Terry from any page other than an "Elect Amanda Stewart" campaign page, and distinguished between her campaign page and her personal Facebook account.

36.     Commissioner Stewart did not restore Mr. Terry's access to her official Facebook page by the December 19, 2025 deadline, and Mr. Terry remains blocked from the page to this day.

37. On June 29, 2023, during a public meeting of the Charles County Board of Commissioners, Commissioner Stewart made false and defamatory statements about Mr. Terry in front of members of the public and government officials.

38. During this public meeting, Commissioner Stewart publicly labeled Mr. Terry as "sexist" and accused him of engaging in "harassment." The statements were made during approximately twelve minutes of remarks by Commissioner Stewart.

39. The public meeting was recorded and broadcast by Charles County through its official channels.

40. Commissioner Stewart's statements that Mr. Terry is "sexist" and has engaged in "harassment" were false. Mr. Terry has not engaged in sexist conduct or harassment of Commissioner Stewart or anyone else.

41. The accusation that Mr. Terry engaged in "harassment" imputes criminal conduct. Under Maryland law, harassment is a criminal offense.

42. Commissioner Stewart made the defamatory statements with knowledge of their falsity or with reckless disregard for whether they were true or false. Commissioner Stewart had no factual basis for accusing Mr. Terry of being "sexist" or of engaging in "harassment."

43. Upon information and belief, Commissioner Stewart made the defamatory statements for the purpose of injuring Mr. Terry's reputation and deterring him from continued civic engagement and criticism of her official conduct.

### HARM CAUSED

44. As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer substantial harm.

45. Mr. Terry has been deprived of his constitutional right to engage in political speech and participate in the digital public forum that Commissioner Stewart has created through her official Facebook page. For nearly seven years, Mr. Terry has been unable to access official government communications, participate in discussions about county policies, receive announcements about public meetings and events, and engage with his elected representative through this important channel.

**COUNT I**
**Violation of First Amendment Rights under 42 U.S.C. § 1983**

46. Mr. Terry incorporates herein the allegations set forth in paragraphs 1 through 45, above.

47. The First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits government officials from engaging in viewpoint discrimination in public forums. When a government official creates a public forum for the exchange of ideas on matters of public concern, the official may not exclude individuals from that forum based on their viewpoints.

48. Commissioner Stewart's official Facebook page constitutes a designated public forum. Through this page, Commissioner Stewart has intentionally opened a channel for interactive public discourse on matters of county government business, inviting constituents to view official posts, submit comments, and engage in discussions about matters of public concern.

49. Commissioner Stewart is a state actor for purposes of 42 U.S.C. § 1983. As an elected County Commissioner, she possesses actual authority to speak on behalf of Charles County government and to communicate with constituents regarding official county business. Through her Facebook page, Commissioner Stewart purports to exercise that authority by

presenting herself as a Commissioner, using the page to conduct official business, and interacting with constituents in her governmental capacity.

50. Commissioner Stewart blocked Mr. Terry from her official Facebook page because of his political opposition to her, his candidacy for the Board of Commissioners in 2018, and his criticism of her official conduct and policy positions. The blocking was based on the viewpoint expressed in Mr. Terry's speech and civic engagement.

51. By blocking Mr. Terry from her official Facebook page based on his viewpoint, Commissioner Stewart violated Mr. Terry's First Amendment rights to freedom of speech, freedom of association, and the right to petition the government.

52. Commissioner Stewart's violation of Mr. Terry's First Amendment rights was willful and deliberate, or at a minimum, reflects a deliberate indifference to Mr. Terry's clearly established constitutional rights. Despite Mr. Terry's formal demands to restore his access, Commissioner Stewart has refused to do so and continues to exclude Mr. Terry from the public forum based on his viewpoint.

53. A reasonable official in Commissioner Stewart's position would have known that such conduct was unconstitutional.

## **PRAYER FOR RELIEF**

Plaintiff Derrick N. Terry respectfully requests that the Court enter judgment on the Complaint, in his favor and against Defendant Amanda M. Stewart, as follows:

A. Declare that Commissioner Stewart violated Mr. Terry's First Amendment rights by blocking him from her Facebook page based on his viewpoints;

B. Permanently enjoin Commissioner Stewart from blocking or otherwise restricting Mr. Terry's access to her Facebook page based on his viewpoint or protected speech;

C. Order Commissioner Stewart to immediately restore Mr. Terry's access to her Facebook page;

D. Award Mr. Terry compensatory damages for the harm he suffered as a result of Commissioner Stewart's conduct, in fair and reasonable amount to be determined at trial;

E. Award Mr. Terry punitive damages against Commissioner Stewart, in an amount that sufficiently punishes, penalizes, and/or deters her unlawful conduct;

F. Award Mr. Terry the costs and fees he incurred in connection with this action, including reasonable attorney fees; and

G. Grant Mr. Terry such other relief as the Court deems just and proper.


Dated: February 20, 2026

*/s/ Jordan D. Howlette*
JORDAN D. HOWLETTE
D. Md. Bar No.: 21634
Managing Attorney
Justly Prudent
1140 3rd St. NE, Suite 2180
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@justlyprudent.com
*Counsel for Plaintiff*